IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DAVID WHITE,<br><br>            Plaintiff,<br>   v.<br><br>DAVE COFFMAN, MARK BRANSOM, and KLAMATH RIVER RENEWAL CORPORATION,<br><br>            Defendants. | Case No.: 3:24-cv-00755-JR<br><br><br>OPINION & ORDER |

**Adrienne Nelson, District Judge**

    United States Magistrate Judge Jolie A. Russo issued her Findings and Recommendations ("F&R") in this case on July 1, 2024, recommending that this Court grant defendants' Motion to Dismiss, grant defendants' Requests for Judicial Notice in part, and deny all other pending motions as moot. Plaintiff timely filed objections, to which defendants responded. After reviewing the parties' pleadings, the Court finds that oral argument will not help resolve this matter. Local R. 7-1(d).

    A district court judge may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(l). When a magistrate judge issues a findings and recommendation related to a dispositive motion and a party files objections, "the court shall make a de novo determination of those portions of the report." *Id.* However, if the magistrate judge's findings and recommendation is related to a non-dispositive matter and a party files objections, the district judge may reject the determinations *only* if the magistrate judge's order is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A). If no objections are filed, then no standard of review applies. However, further review by the district court *sua sponte* is not prohibited. *Thomas v. Arn*, 474 U.S. 140, 154 (1985). The Advisory Committee notes to Federal Rule of Civil Procedure 72(b) recommend that unobjected to proposed findings and recommendations be reviewed for "clear error on the face of the record." Fed. R. Civ. P. 72(b) advisory committee's note to 1983 amendment.

1

## DISCUSSION

The relevant facts are set forth in the F&R, but a brief summary is provided.[1] Plaintiff's claims are related to the planned demolition of a series of dams on the Klamath River. F&R, ECF [63], at 2. These dams are part of the Klamath Hydroelectric Project and fall under the authority of the Federal Energy Regulatory Commission ("FERC"), which "has exclusive power to grant licenses for their operation or approval for the surrender of the licenses and the decommissioning and removal of the dams." *Id.* (quoting *Linthicum v. Fed. Energy Regul. Comm'n*, No. 1:23-cv-00834-AA, 2023 WL 5275491, at *3 (D. Or. Aug. 16, 2023)).

In 2010, PacificCorp, which operated the dams on the Klamath River and held licenses associated therewith, and forty-seven other parties executed the Klamath Hydroelectric Settlement Agreement. *Id.* That agreement "provided for decommissioning and removing" the four dams on the Klamath River. *Id.* (quoting Markley Decl., ECF [39], Ex. 1, at 3). The agreement was amended in 2016 to its current, operative form. *Id.* As amended, the agreement sets forth a process by which PacificCorp and the Renewal Corporation would request FERC approval to transfer the dam licenses to the Renewal Corporation, which would then seek approval to decommission and remove the four dams and associated facilities for various environmental, ecological, and cultural purposes. *Id.* at 2-3. The Renewal Corporation and PacificCorp filed the surrender application in September of 2016, which was approved by FERC on June 17, 2021. *Id.* at 3.

On November 17, 2022, FERC issued a second order approving surrender of the licenses and decommissioning the four hydroelectric dams, powerhouses, and associated facilities on the Klamath River ("Surrender Order"). *Id.* Various compliance conditions were included in the Surrender Order, including mitigation measures from an Environmental Impact Statement ("EIS") issued on August 26, 2022. *Id.* On November 22, 2022, defendants received a Clean Water Act Section 404 permit for dam removal. *Id.* at 4.

---

[1] Plaintiff objects to several findings of fact in the F&R but, as discussed below, these objections do not evidence any error in the F&R. Thus, the Court adopts the findings of fact and references them in its summary.

No rehearing of the Surrender Order or the license transfer was sought within the timeframe specified in 16 U.S.C. § 825*l*. *Id.* Thus, the Renewal Corporation began undertaking the engineering, construction, and environmental restoration necessary to decommission the Klamath River dams and to implement the Clean Water Action Section 404 permit. *Id.* Dam removal is projected to be finished by October 2024. *Id.*

On May 3, 2024, plaintiff brought the present action seeking to enjoin the "removal of the last of 4 dams on the Klamath River, the Iron Gate dam." *Id.* (quoting Compl., ECF [1], at 6). Plaintiff also filed a motion for preliminary injunction, along with numerous other motions, requesting, among other relief, a declaration that FERC's actions are null and void, criminal liability against defendants under 18 U.S.C. § 41, and an order stopping the ongoing removal of the Iron Gate Dam. *See, e.g.*, Pl.'s Mot. For Prelim. Inj., ECF [5]; Pl.'s Emergency Mot., ECF [12]; Pl.'s Emergency Mot. For Disc., ECF [13]; Pl.'s Emergency Mot., ECF [14]. These motions were denied because they were not "within the Court's discretion, properly raised at this stage of the proceedings, or procedurally appropriate." Order of May 16, 2024, ECF [15].

On May 16, 2024, defendants moved to set a briefing schedule regarding plaintiff's motion for preliminary injunction and their own motion to dismiss. Defs.' Joint Mot. Set Br. Schedule, ECF [18]. Defendants specified that they were "willing to deem Plaintiff as having properly [effectuated service] . . . as of May 17, 2024," and requested until May 31, 2024 to file their motion to dismiss. *Id.* at 2-3. Defendants also requested that the Court rule on the motion to dismiss prior to requiring that defendants respond to plaintiff's motion for preliminary injunction. *Id.* at 3. Plaintiff opposed the motion, contending that he had emailed the complaint and motion for preliminary injunction to defense counsel on May 7, 2024 and provided service papers to the U.S. Marshals on May 20, 2024. Pl.'s Resp. to Mot. Set. Br. Schedule, ECF [24], at 4-7.

On May 24, 2024, this Court granted defendants' motion to set a briefing schedule and stayed the pleading deadlines pending resolution of defendants' motion to dismiss. Order of May 24, 2024, ECF [30]. The Court further denied pending motions filed by plaintiff, noting that it "has denied eight of

3

plaintiff's motions, each asking for the same relief that has previously been denied," and emphasizing that "the Court will not entertain further motions by plaintiff on those issues until resolution of defendants' motion to dismiss and plaintiff's motion for preliminary injunction." *Id.*

On July 1, 2024, Judge Russo issued her F&R on defendants' motion to dismiss, defendants' requests for judicial notice, and plaintiff's fifteen subsequently filed motions. The F&R concluded that: (1) defendants' requests for judicial notice should be granted to the extent the documents are relevant to the motion to dismiss; (2) the Court's prior rulings do not demonstrate bias because they do not show reliance on an extrajudicial source or a sufficiently high degree of favoritism or antagonism to make fair judgment impossible; (3) the Court lacks subject matter jurisdiction to review plaintiff's challenges to the lawfulness of defendant's actions under the Federal Power Act, 16 U.S.C. § 825*l*(b); and (4) plaintiff had not alleged a concrete and particularized injury sufficient to establish Article III standing.

Plaintiff timely filed objections, but also made an untimely request for judicial notice in relation to his objections. The Court declines to review the untimely submission, and plaintiff's request of judicial notice is denied. As for plaintiff's timely objections, he, in part, makes lengthy objections to this Court's prior orders, including those made on plaintiff's various motions and defendants' motion to set a briefing schedule. These are not objections to the F&R and thus are not considered. The Court now turns to plaintiff's properly made objections that address specific sections of the F&R.[2]

**A.    Objections to Findings of Fact**

First, plaintiff argues the F&R erred by stating that his case arises out of plaintiff's "efforts to stop the planned demolition of a series of dams on the Klamath River." Plaintiff argues that this is not true because FERC is not a defendant and the case "is clearly about defendants' assaults on the environment." Pl.'s Objs., ECF [65], at 10. Whether FERC is a defendant is irrelevant to the fact that plaintiff's case is clearly an effort to stop the planned demolition of dams on the Klamath River. Plaintiff's complaint and motion for preliminary injunction both clearly state that the relief sought is prevention of the

---

[2] Because plaintiff's objections are not always clearly delineated, the Court liberally construes plaintiff's pleading in identifying his objections.

4

removal of the Iron Gate dam. *See* Compl. 24 ("This injunction is to stop the removal of any more Klamath River dams until such time as the federal litigation of this complaint is adjudicated. Stop the remaining Klamath River Dams from being removed."); Pl.'s Mot. For Prelim. Inj. 1 ("Plaintiff[ ] hereby move[s] pursuant to Federal Rule of Civil Procedure 65 for a preliminary injunction prohibiting Defendants from engaging in further removal of any more Klamath River Dams[.]").  Although plaintiff may believe such injunctive relief is necessary to prevent defendants' "assaults on the environment," he seeks to prevent such alleged harm by stopping demolition of the dams.  Pl.'s Objs. 10.  No other interpretation of plaintiff's claims is plausible.

Second, plaintiff objects to the F&R's statement that various stakeholders agreed that dam removal and river restoration would be overseen by the Renewal Corporation because he alleges that individuals living in Klamath Falls and Yreka, California disagreed with removal.  The F&R never stated that these individuals agreed to such removal—indeed, it did not reference them at all.  It merely stated that the stakeholders involved in the Klamath Hydroelectric Settlement Agreement, which included PacificCorp and forty-seven other parties, agreed that the restoration would be overseen by the Renewal Corporation.

Third, plaintiff objects to the F&R's use of the phrase "environmental restoration" in describing the Renewal Corporation's actions in decommissioning the Klamath River dams.  Plaintiff claims that the phrase "environmental destruction" is more appropriate.  This argument fails to state a specific ground for the objection, aside from demonstrating plaintiff's general disagreement with the phrase.

Fourth, plaintiff objects to the F&R's statement that "the Renewal Corporation's habitat restoration contractor [ ] has performed ongoing biological monitoring and will continue work after dam removal is complete." F&R 4.  Plaintiff asserts that such monitoring is not actually happening.  The F&R's finding makes no mention of the efficacy of the biological monitoring, it merely acknowledges that a habitat restoration contractor has been hired for such monitoring.  This fact is supported by evidence on the record.

**B.     Objections to Conclusions of Law**

Plaintiff objects to the F&R's conclusion that this action is governed by the Federal Power Act ("FPA"), reiterating his argument that the act is inapplicable because FERC is not a named defendant.

Under 16 U.S.C. § 825*l*(b), "all objections to the [FERC] order, to the license it directs to be issued, and to the legal competence of the licensee to execute its terms, must be made in the Court of Appeals or not at all." *City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320, 336 (1958). The Ninth Circuit has squarely rejected the notion that the FPA's jurisdictional requirements only apply to actions brought against FERC. *See Cal. Save Our Streams Council, Inc. v. Yeutter*, 887 F.2d 908, 912 (9th Cir. 1989) ("[A]lthough appellants seek to characterize the proceedings as an attack on the Forest Service's actions, it is clear that the suit is an attempt to restrain the licensing procedures authorized by FERC. The 4(e) conditions imposed by the Service have no significance outside the licensing process, and we do not believe that the jurisdictional remedy prescribed by Congress hangs on the ingenuity of the complaint."). Like the plaintiff in *Yeutter*, the practical effect of plaintiff's claim is "an assault on . . . the FERC license," *id.*, because his claims are "inescapably intertwined with a review of the agency's final determination," *Otwell v. Ala. Power Co.*, 747 F.3d 1275, 1282 (11th Cir. 2014). Thus, the absence of FERC as a defendant does not affect the FPA's jurisdictional requirements, and this Court lacks jurisdiction to address plaintiff's claims.

Plaintiff also argues that FERC violated *Loper-Bright Enterprises v. Raimondo*, __ U.S. __, 144 S. Ct. 2244 (June 28, 2024), and "cherry-picked data from overwhelming testimony against dam removal." Pl.'s Objs. 11. Plaintiff misunderstands the effect and meaning of *Loper-Bright*—this case overturned the *Chevron* doctrine, but it has no bearing on the applicability of the FPA or the standing issues presented in this case. Plaintiff also appears to argue that, under *Loper-Bright*, the F&R is "an administrative law order." *Id.* at 3. This incorrect as a matter of law. Magistrate judges are not administrative agencies, and *Loper-Bright* has no relevance to the authority granted to magistrate judges under the Federal Magistrates Act, 28 U.S.C. § 631 *et seq*.

Plaintiff objects to the F&R's conclusion that he has not demonstrated how defendants failed to comply with the mitigation measures required by the Surrender Order. He states that this conclusion is "ludicrous" and that "no mitigation was effected to keep fish and animals from being killed," despite mitigation requirements in the Surrender Order. Pl.'s Objs. 16. He alleges that "[o]bviously, mitigation has not occurred because of impending floods, over 2,000 fish (including endangered Salmon)

and a herd of elk killed without permits, and arsenic and other contaminants blowing in the wind." *Id.* at 19. Plaintiff's personal statements are insufficient evidence to support his claims, and, regardless, fail to identify any specific portion of the Surrender Order that defendants allegedly violated.

Plaintiff objects to the F&R's conclusion that he lacks Article III standing. He argues that he "hoped to receive a positive ruling in this case and then move back to Klamath Falls with his team." *Id.* at 25. He also argues that he was in "Central Point for a weekend exploring homes to [p]urchase," and that this area is "directly affected by the Klamath River dam removal." *Id.* Past enjoyment alone is insufficient to establish Article III standing. *Wilderness Soc'y, Inc. v. Rey*, 622 F.3d 1251, 1256 (9th Cir. 2010) ("[A] 'some day' general intention to return to the [area at issue] is too vague to confer standing."). Plaintiff's new assertion that he plans to move back to Klamath Falls after a "positive ruling in this case" is not a "description of concrete plans," nor does it provide any "specification of *when* the some day will be." *Id.* Additionally, this statement is directly contradicted by plaintiff's past statements, further evidencing the vague nature of this assertion. *See* Pl.'s Resp. to Jurisdiction, ECF [53], at 18 ("The ensuing psychological and emotional duress has moved Plaintiff to the point of selling his home, and moving out of state, with the sale likely to close soon."). Plaintiff has not demonstrated a particularized, concrete injury sufficient to establish Article III standing.

## CONCLUSION

Upon review, the Court ADOPTS the F&R, ECF [63], as its own opinion. Defendants' Requests for Judicial Notice, ECF [38] and [61], are GRANTED. Defendants' Motion to Dismiss, ECF [37], is GRANTED. Plaintiff's Request for Judicial Notice, ECF [67], is DENIED. All pending motions are denied as moot.

IT IS SO ORDERED.

DATED this 26th day of July, 2024.

_____
Adrienne Nelson
United States District Judge